UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUSTEES FOR THE MASON TENDERS
DISTRICT COUNCIL WELFARE FUND, PENSION
FUND, ANNUITY FUND, AND TRAINING
PROGRAM FUND,

and

ANNA GUTSIN, *in her fiduciary capacity as
Director*, and ROBERT BONANZA, *as Business
Manager of the Mason Tenders District Council of
Greater New York,*

Petitioners,

-v.-

TRI-STATE CONSTRUCTION & MASONRY INC.,

Respondent.

20 Civ. 2642 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Petitioners Trustees for the Mason Tenders District Council Welfare
Fund, Pension Fund, Annuity Fund, and Training Program Fund (collectively,
the "Funds"), and Robert Bonanza, as Business Manager of the Mason Tenders
District Council of Greater New York (the "Union," and together with the
Funds, "Petitioners"), have filed this motion for summary judgment on their
petition to confirm a March 30, 2019 arbitral award (the "Award"), issued by
arbitrator Joseph A. Harris, Ph.D. (the "Arbitrator") in favor of Petitioners.
Respondent Tri-State Construction & Masonry, Inc. ("TSM") has not opposed
the petition or the summary judgment motion, nor has it otherwise appeared in
this action. For the reasons set forth in the remainder of this Opinion,
Petitioners' motion is granted in full.

## BACKGROUND[1]

The Funds are employee benefit plans, established and maintained pursuant to certain trust agreements, that are jointly administered by a board of trustees made up of union and employer representatives. (Pet. 56.1 ¶ 1). The purpose of the Funds, among other things, is to provide fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the building and construction industry and the union. (*Id.*).

The Union is a labor organization, which represents employers in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act, 29 U.S.C. § 142, and Section 3(4) of ERISA, 29 U.S.C. § 1002(4). (Pet. 56.1 ¶ 3). Robert Bonanza is the Business Manager of the Union; he brings this action for dues and contributions in his representative capacity pursuant to Section 12 of the General Associations Law of the State of New York. (*Id.* at ¶ 4).

TSM is a masonry contractor located in Brooklyn, New York. (Pet. 56.1 ¶ 5). TSM is bound to the terms and conditions of the New York City School Construction Authority's ("SCA") Project Labor Agreement Covering Specified Construction Work Under the Capital Improvement Program for Fiscal Years 2009-2014 and 2014-2019 (the "PLA") with the Building and Construction Trades Council of Greater New York, of which the Union is a member. (*Id.*). In

---

[1] The facts in this Opinion are drawn from the petition ("Petition" or "Pet." (Dkt. #1)); the declaration of Haluk Savci ("Savci Decl." (Dkt. #11)); the Award (Dkt. #11-1), and the Petitioners' Rule 56.1 Statement ("Pet. 56.1" (Dkt. #13)).

addition to establishing the terms and conditions of employment for all employees performing covered work, the PLA requires signatory employers to pay timely benefit contributions on behalf of all covered workers to certain benefit funds.  (Pet. 56.1 ¶ 7).  Mohammad Shabir, TSM's President, executed an affidavit on April 19, 2013, binding TSM to the terms of the PLR with respect to the Union work at issue here.  (*Id.* at ¶ 5).

This action arose after the Funds' discovery that TSM had failed to pay all requisite benefit contributions on behalf of its covered employees for the work period spanning September 1, 2013, to December 31, 2016.  (Pet. 56.1 ¶ 15).  On March 1, 2019, the Funds served TSM with a Notice of Arbitration, copying the Arbitrator.  (*Id.* at ¶ 13).  The same day, the Arbitrator forwarded a notice scheduling the matter for hearing on March 25, 2019, to all parties. (*Id.*).  The Arbitrator convened the hearing on March 25, 2019.  (*Id.* at ¶ 14). No representative for Respondent appeared.  (*Id.*).  After finding that Respondent had sufficient notice of the hearing, the Arbitrator proceeded with the hearing as a default.  (*Id.*).

The Funds submitted evidence in support of their claim that TSM had failed to pay required benefit contributions and other monies for its workers. (Pet. 56.1 ¶ 15).  The evidence included a copy of the auditor's report completed following a books and records examination of TSM covering the period September 1, 2013, through December 31, 2016, and an accompanying deficiency report that calculated that TSM had failed to pay $73,826.38 in contributions, $6,007.28 in dues and PAC contributions, $20,439.22 in

interest, and $19,687.04 in imputed audit costs.  (*Id.*).  The Funds also

submitted testimony through their delinquency manager that TSM owed

interest on late contributions made to the Funds for the period March 1, 2014,

through December 31, 2014, totaling $3,004.98.  (*Id.*).

The Arbitrator issued the Award on March 30, 2020, finding, based on

the evidentiary record at the hearing, that TSM had failed to make the requisite

payments to the Funds.  (Pet. 56.1 ¶ 16).  He ordered TSM to pay the Funds a

total amount of $166,443.34, comprising the amounts detailed above as well as

liquidated damages of $40,878.44, legal costs of $500.00, and arbitration fees

of $2,100.00.  (*Id.*).  No payments have been received against the Award.  (*Id.* at

¶ 17).

## DISCUSSION

**A.   Applicable Law**

**1.   Standard of Review for Labor Arbitration Awards**

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

§ 185, rather than the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, provides

that federal district courts have jurisdiction over violations of labor contracts.

*See Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*,

820 F.3d 527, 536, 545 n.13 (2d Cir. 2016).  Actions to confirm and vacate

arbitration awards fall within that statute.  *See, e.g.*, *Kallen* v. *Dist. 1199, Nat'l*

*Union of Hosp. & Health Care Emps.*, 574 F.2d 723, 725 (2d Cir. 1978); *Local*

*802, Associated Musicians of Greater New York* v. *Parker Meridien Hotel*, 145

F.3d 85, 88 (2d Cir. 1998).  At the same time, federal courts enforcing labor

arbitration awards look to the FAA "to guide the development of rules of federal common law to govern [] disputes [regarding labor contracts] pursuant to the authority to develop such rules granted under 29 U.S.C. § 185." *Supreme Oil Co.* v. *Abondolo*, 568 F. Supp. 2d 401, 405 n.2 (S.D.N.Y. 2008); *see United Paperworkers Int'l Union* v. *Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) ("The [Federal] Arbitration Act does not apply to 'contracts of employment of … workers engaged in foreign or interstate commerce,' 9 U.S.C. § 1, but the federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the [LMRA] …, empowers the federal courts to fashion rules of federal common law to govern suits for violation[s] of contracts between an employer and a labor organization under the federal labor laws." (internal quotation marks and alterations omitted)).

The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). "Further, 'the federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes.'" *Supreme Oil Co.,* 568 F. Supp. 2d at 406 (quoting *N.Y. Hotel & Motel Trades Council AFL-CIO* v. *Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)). "Judicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509

(2001). "[I]f an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Id.* (quoting *E. Associated Coal Corp.* v. *United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)); *see also Wackenhut Corp.* v. *Amalgamated Local 515*, 126 F.3d 29, 31-32 (2d Cir. 1997) ("[A]n arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached.'" (second alteration in original) (quoting *Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 704 (2d Cir. 1978)); *see generally D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

However, "great deference ... is not the equivalent of a grant of limitless power." *Leed Architectural Prods., Inc.* v. *United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990). "An arbitrator's authority to settle disputes under a collective bargaining agreement is contractual in nature, and is limited to the powers that the agreement confers." *Id.*; *accord Local 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL-CIO* v. *Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) ("The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." (internal quotation marks and alterations omitted)). "This rule applies not only to the arbitrator's substantive findings, but also to his choice of remedies[:] He may not impose a remedy which directly contradicts the express language of the collective bargaining agreement." *Leed Architectural Prods.*, 916 F.2d at 65 (internal quotation marks omitted).

6

"[W]hen the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice … his decision may be unenforceable." *Major League Baseball*, 532 U.S. at 509 (internal quotation marks and alterations omitted).

"Since the arbitrator is not free merely to dispense his own brand of industrial justice …  [t]he principal question for the reviewing court is whether the arbitrator's award draws its essence from the collective bargaining agreement." *Saint Mary Home, Inc.* v. *Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997) (internal quotation marks and alteration omitted); *accord United Steelworkers of Am.* v. *Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) ("[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.").  An arbitrator's "award is legitimate only so long as it draws it essence from the collective bargaining agreement." *United Steelworkers*, 363 U.S. at 597.  "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.*; *see also 187 Concourse Assocs.* v. *Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (concluding that a court may vacate an award when "the arbitrator exceeds his powers" by acting beyond the scope of authority under the agreement or submission).

### 2.    Standard of Review for Motions for Summary Judgment

District courts treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment. *City of New York* v. *Mickalis Pawn*

*Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011).  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To discharge this burden, a summary-judgment movant "bears the initial responsibility of ... demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).  "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion."  *Figueroa* v. *Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If a movant makes this showing, the non-movant "must 'set forth specific facts demonstrating that there is a genuine issue for trial,' and cannot 'merely rest on the allegations or denials' contained in the pleadings."  *Trs. for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program Fund and Bonanza* v. *YES Restoration*, No. 14 Civ. 8536 (KPF), 2015 WL 3822764, at *3 (S.D.N.Y. June 19, 2015) (quoting *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

"A court reviewing a motion for summary judgment must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Beyer* v. *Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

B.      **Analysis**

1.      **The Grounds for the Arbitration Award Are Clear**

The Arbitrator's Award was well-supported by the record.  The Funds submitted ample evidence in support of their claim against TSM, including the auditors' report detailing the delinquency owed by TSM, which detailed hours worked by employees covered by the PLA for which corresponding and required benefit contributions had not been remitted to the Funds on their behalf. (Award 2).  The Funds also submitted the auditors' deficiency report listing unpaid fringe benefits in the amount of $73,826.36, unpaid dues and PAC contributions of $6,007.28, current interest of $20,439.22, and audit costs of $19,687.04, for a total of $119,959.92.  (*Id.*).  The Arbitrator's findings surpass the degree of reasoning that courts require to confirm an arbitration award. *See D.H. Blair & Co.*, 462 F.3d at 110; *cf. Tube City IMS, LLC* v. *Anza Capital Partners, LLC*, 25 F. Supp. 3d 486, 491 (S.D.N.Y. 2014) (confirming arbitration award for return of overpaid invoices).

Further, the applicable collective bargaining agreement — in this case, the PLA — permits the Union to elect to pursue arbitration in matters involving employers' alleged failure to make requisite payments to the Funds.  (*See* Savci Decl., Ex. 2).  After noticing TSM of the arbitration, the Funds properly submitted the matter to arbitration.  (*See* Award 1-2).[2]  There are no grounds for setting aside the Award.  *See Major League Baseball Players Ass'n*, 532 U.S.

---

[2]      The Arbitrator also noticed all parties of the fact that he would hold a hearing.  (*See* Savci Decl. Ex. 1).

at 509; *cf. D.H. Blair & Co.*, 462 F.3d at 110 ("[T]he court 'must grant'
the award 'unless the award is vacated, modified, or corrected.'" (quoting 9
U.S.C. § 9)); *see also Glob. Gold Min. LLC* v. *Caldera Res., Inc.,* 941 F. Supp. 2d
374, 380 (S.D.N.Y. 2013) ("Neither party challenges that arbitration was the
appropriate forum for resolving this dispute.").

> ### 2.    Petitioners Are Entitled to Confirmation of the Total Amount of the Arbitrator's Award

Based on this evidence, the Arbitrator issued his award ordering TSM to
pay the Funds: (i) delinquent contributions for fringes of $73,826.38; (ii) dues
and PAC contributions of $6,007.28; (iii) current interest of $20,439.22;
(iv) audit costs of $19,687.04; (v) ERISA penalty of double the interest owed of
$40,878.44; (vi) interest on late payments of $3,004.98; (vii) attorneys' fees of
$500; and (viii) arbitrator fees of $2,100.  (*See* Award 2-3).  The Arbitrator
provided more than a "colorable justification" for the award of $166,443.34.
*D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp.* v. *Local
32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)); *see also
N.Y.C. Dist. Council of Carpenters* v. *WJL Equities Corp.*, No. 15 Civ. 4560 (KPF),
2015 WL 7571835, at *4 (S.D.N.Y. Nov. 24, 2015) (confirming arbitration award
where "findings [were] in line with the written agreement, and [party
challenging confirmation] provided no evidence that would draw them into
question").

**CONCLUSION**

For the reasons explained above, the Petition and the correlative summary judgment motion are GRANTED in Petitioners' favor.  Petitioners are ORDERED to submit a proposed final judgment on or before **August 14, 2020**.

SO ORDERED.

Dated:        August 3, 2020
              New York, New York

                                        _____
                                        KATHERINE POLK FAILLA
                                        United States District Judge

11